IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02369-PAB-KMT

LARRY SIPES,

      Plaintiff,

v.

ALLSTATE INDEMNITY COMPANY, an Illinois corporation,

      Defendant.

---

## ORDER

---

      This matter is before the Court on the Motion for Partial Summary Judgment filed by defendant Allstate Indemnity Company ("Allstate") [Docket No. 42]. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

      This case involves a dispute between plaintiff Larry Sipes and Allstate over whether Allstate properly denied coverage for a fire that damaged plaintiff's rental property. The fire occurred on March 30, 2010 at Mr. Sipes' rental house located at 413 30 1/4 Rd., Grand Junction, Mesa County, CO (the "Rental Property"). Allstate insured the Rental Property.[2] As a result of the fire, Mr. Sipes filed a claim with Allstate for insurance benefits.

---

      [1]The following facts, unless otherwise indicated, are not in dispute.

      [2]The Rental Property was insured against loss or damage due to a fire under Allstate Policy No. 964403968. Docket No. 15 at 5-6, ¶ 3.

Allstate assigned Mr. Sipes' claim to senior claims analyst Stephanie Littleton, manager of Allstate's special investigations unit.  Docket No. 42-2 at 5 (Littleton Dep. 12:20-25).  To investigate Mr. Sipes' claim, Allstate obtained a fire origin and cause report prepared by the Clifton Fire Department, Docket No. 42-7, retained Phoenix Investigations, a private fire inspection company, to prepare a fire origin and cause report, Docket No. 42-8, and retained Rita L. Booker, an attorney who specializes in insurance defense litigation, Docket No. 42-4 at 3-4 (Booker Dep. 7:17-8:6), to prepare a coverage analysis opinion letter.  Docket No. 42-3.

The Clifton Fire Department's report on the origin and cause of the fire was prepared by Chris Rowland, a firefighter with the Clifton Fire Department.  Mr. Rowland began his investigation after the Clifton Fire Department extinguished the fire on March 30, 2010.  He issued a Preliminary Origin and Cause Investigation Report [Docket No. 42-7] on May 5, 2010.[3]  Mr. Rowland's investigation consisted of an examination of the exterior and interior of the rental property, as well as interviews with Mr. Sipes, firefighters, previous tenants of the Rental Property, and neighbors of the Rental Property.  Docket No. 42-7 at 1.  In the report's conclusions, Mr. Rowland opined that the fire had two areas of origin (1) the north wall of the kitchen and (2) the utility room west of the kitchen.  *Id*. at 7.  In addition, Mr. Rowland opined that the fire was incendiary.[4]  *Id*.  Mr. Rowland reached this conclusion because he eliminated all

---

[3]Mr. Rowland later issued a "final" report that contained identical conclusions. Docket No. 42 at 6, n. 1.

[4]The word "incendiary" as used in the fire investigation context means a fire that is intentionally, not accidentally, set by one or more persons. *Somnis v. Country Mut. Ins. Co.*, 840 F. Supp. 2d 1166, 1169 (D. Minn. 2012).

potential accidental causes of the fire, such as lightning, chemicals capable of spontaneous ignition, fire sources from the exterior of the house, overheated or overloaded electrical systems, household devices plugged into a power source, and explosions due to the release of natural gas. *Id*. at 8.  Mr. Rowland's belief that the fire was incendiary was further bolstered by evidence indicating that there were (1) multiple areas of origin, (2) insufficient fuel loads in the areas of origin to sustain a fire, (3) no reasonable accidental or natural ignition sources in the areas of origin, and (4) the fact that the Rental Property was unlocked before the fire. *Id*. at 7-8.

In addition to the report from the Clifton Fire Department, Allstate retained Phoenix Investigations for a second opinion on the origin and cause of the fire.  Docket No. 42-8 at 1.  Jason Kramarczyk, a certified fire and explosion investigator with Phoenix Investigations, prepared a fire origin and cause report.  To conduct his investigation, Mr. Kramarczyk examined the interior and exterior of the Rental Property, interviewed Mr. Sipes and his neighbors, and contacted the Clifton Fire Department for a copy of Mr. Rowland's report. *Id*. at 2.  Based on his investigation, Mr. Kramarczyk made the following findings: (1) the fire originated near the floor area surrounding the north wall of the kitchen to the left/west of the cabinets; (2) all accidental causes of the fire were examined and eliminated; (3) the fire damage was not consistent with the fuel load reportedly present in the kitchen prior to the fire; and (4) the fire was most likely caused by an unidentified human act.  Docket No. 42-8 at 1.  Mr. Kramarczyk, however, could not opine as to whether the unidentified human act was intentional.  Docket No. 47-6 at 5 (Kramarczyk Dep. 155:18-20).

In addition to the fire origin and cause reports, Allstate retained Ms. Booker to prepare a coverage analysis opinion. On August 31, 2010, Ms. Booker issued a coverage analysis opinion based on a review of the fire origin and cause reports, a deposition of Mr. Sipes, and an analysis of the case law applicable to Mr. Sipes' claim. Docket No. 42-3 at 1. Ms. Booker concluded that there was a "reasonable good-faith basis upon which to deny Mr. Sipes' property damage claims as an intentional act excluded from coverage." Docket No. 42-3 at 8.

Ms. Booker opined that Allstate also had sufficient evidence to deny Mr. Sipes' coverage claim based on the defense of arson. Docket No. 42-3 at 5-6. Specifically, Ms. Booker found that the fire origin and cause reports and the relevant interviews sufficiently established that (1) there was evidence of arson, (2) Mr. Sipes had a motive to commit arson, and (3) the circumstantial evidence supported a finding of arson. *Id*. at 5-7. With regard to evidence of arson, Ms. Booker reasoned that the findings from the fire origin and cause reports conducted by Mr. Rowland and Mr. Kramarczyk showed that "an intentionally set fire [was] the only fire cause scenario that fits with both the fire's origin being distant from a fuel load and the cause of the fire in an area distant from any other potential causes." *Id*. at 6. As to motive, Ms. Booker opined that mold in the Rental Property gave Mr. Sipes a motive to commit arson because: (a) Mr. Sipes claimed that he did not know the extent of the mold even though two different tenants had reported the mold; (b) the mold was the reason the Wesolowskis – the prospective tenants of the Rental Property – chose to break their lease agreement; and (c) Mr. Sipes specifically denied the existence of mold in the Rental Property when first questioned by Mr. Rowland and conceded its existence only after Mr. Rowland

4

interviewed the Wesolowskis.  *Id*. at 6.  Additionally, Ms. Booker opined that Mr. Sipes could have had a financial motive to commit arson because a report prepared by Larry Engrav, an accountant, concluded that Mr. Sipes did "not receive reportable income sufficient to cover his household expenses."  *Id*. at 4.  Finally, Ms. Booker found that the circumstantial evidence supported an inference of arson because it was suspicious that Mr. Sipes left the Rental Property unlocked and bought several gallons of easily returnable paint on the day of the fire, even though he allegedly did not personally inspect the mold.  *Id*. at 6-7.  In particular, Ms. Booker found that Mr. Sipes' purchase of paint without any color additive proved suspicious because Mr. Sipes could return the untinted paint for full value and it was reasonable to infer from the purchase that it was made to establish an alibi.  *Id*. at 7.

After Ms. Littleton received the fire origin and cause reports and Ms. Booker's coverage analysis, she prepared an "Outcome Summary," which described Allstate's analysis of Mr. Sipes' coverage claim.  Docket No. 42-6 at 1-2.  Ms. Littleton's summary concurred with Ms. Booker's findings: it described the fire at the Rental Property as "suspicious," noted that Mr. Sipes' inconsistent statements about the mold in the Rental Property raised questions about his credibility, and suggested that mold was a potential motive.  *Id*. at 1.  Ms. Littleton's summary also concluded that, although there was no direct evidence linking Mr. Sipes with the fire at the Rental Property, the evidence was sufficient to establish a reasonable good-faith basis upon which to conclude that Mr. Sipes intentionally set fire to the Rental Property, thereby excluding the loss from coverage under the insurance policy.  Docket No. 42-6 at 1.

5

On September 18, 2010, Rand Smith, an Allstate claims analyst with experience investigating arson claims, reviewed Ms. Littleton's summary.[5]  Docket No. 42-6 at 2; Docket No. 42-2 at 15 (Littleton Dep. 79:9-23).  Mr. Smith concurred with Ms. Littleton's summary and concluded that there was sufficient evidence to believe that Mr. Sipes caused the fire at the Rental Property, with his financial difficulties or the mold being a motive for the arson.  Docket No. 42-6 at 2.  Of particular importance to Mr. Smith was Mr. Sipes' presence at the Rental Property the morning of the fire, the fact that Mr. Sipes purchased paint "without tinting or adding color," which indicated that he intended to return the paint, and the fact that there remained questions about whether Mr. Sipes had sufficient income to cover the mortgage on the Rental Property.  *Id*.

On September 23, 2010, Allstate sent Mr. Sipes a Claim Denial letter [Docket No. 42-1].  The letter explained that Allstate had denied Mr. Sipes' coverage claim based on the physical evidence gathered at the Rental Property, the Clifton Fire Department's report, the Phoenix Investigations report, and Ms. Booker's coverage analysis letter.  Docket No 42-1.  The Claim Denial letter states that, after investigation, Allstate had a reasonable belief that (1) the fire was intentionally set and not caused by any natural or accidental means, (2) Mr. Sipes either started the fire, or the fire was set at his direction or with his knowledge and consent; and (3) Mr. Sipes concealed or misrepresented material facts related to the Rental Property, such as the cause of loss, his activities prior to the loss, his testimony that he never saw mold in the Rental

---

[5]Ms. Littleton testified that she considered the reports from all investigators and consulted Rand Smith to ensure that the decision to deny coverage was defensible. Docket No. 42-2 at 15 (Littleton Dep. 79:10-25).

Property, and his financial condition before and after the loss, which placed Mr. Sipes'

coverage claim within the exclusions of the insurance policy. *Id*. at 2-3. Based on the

foregoing, Allstate notified Mr. Sipes that his claim was excluded under the "intentional

act," and "misrepresentation, fraud or concealment" clauses of the policy.[6] *See* Docket

No. 42-1 at 2-3. Mr. Sipes disputes Allstate's conclusions that he intentionally set fire to

the Rental Property and concealed or misrepresented any information regarding the

fire. Docket No. 47-8 at 8 (Sipes Dep. 93:16-18); *id*. at 6 (Sipes Dep. 81:13-21).

---

[6]The Allstate Policy states, in relevant part:

***Section 1 - Your Property Losses We Do Not Cover Under Coverage's A & B:***

**We** do not cover loss to the property described in **Coverage A - Dwelling Protection or Coverage B - Other Structures Protection** consisting of or caused by:

. . .

9.     Intentional or criminal acts of, or at the direction of, an **insured** person**,** if the loss that occurs:

> a) may be reasonably expected to result from such acts; or,
> b) is the intended result of such acts.

> This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

**Misrepresentation, Fraud or Concealment**

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance relating to this insurance, before or after the loss.

Docket No. 42-1 at 2 (emphasis in original).

On September 8, 2011, Mr. Sipes filed this case.  In his complaint, he brings claims against Allstate for breach of contract and unreasonable delay or denial of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  Docket No. 1.  Through the present motion, Allstate requests that the Court enter summary judgment for Allstate on Mr. Sipes' claim of unreasonable delay or denial of insurance benefits.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III.  ANALYSIS

Allstate argues that it acted reasonably when it relied on the results of the fire and cause investigations, as well as Ms. Booker's coverage analysis, to deny Mr. Sipes' coverage claim.  Docket No. 42 at 13-14.  Specifically, Allstate claims that, based on

the information it possessed on September 23, 2010 – the date on which it sent the

Claim Denial letter – it had a reasonable belief that Mr. Sipes intentionally set fire to the

Rental Property and misrepresented information during the investigation, thereby

placing his claim outside the policy limits.  *Id*. at 15-16.  Moreover, Allstate contends

that, based on its investigation of Mr. Sipes' coverage claim, it had a reasonable belief

that it could present a valid defense of arson.  *Id*.  Mr. Sipes disputes that he set the fire

at the Rental Property and argues that there are genuine disputes of material fact about

the inferences Allstate draws from the evidence gathered during its investigation.

Docket No. 47 at 9-10.

Under § 10-3-1115, an insurer may not "unreasonably delay or deny payment of

a claim for benefits owed to or on behalf of any first-party claimant."[7]  Colo. Rev. Stat.

§ 10-3-1115(1)(a).  Similarly, § 10-3-1116 states that "[a] first-party claimant as defined

in section 10-3-1115 whose claim for payment of benefits has been unreasonably

delayed or denied may bring an action in a district court to recover reasonable attorney

fees and court costs and two times the covered benefit."  Colo. Rev. Stat. § 10-3-

1116(1).  An insurer's delay is unreasonable "if the insurer delayed or denied

authorizing payment of a covered benefit *without a reasonable basis* for that action."

Colo. Rev. Stat. § 10-3-1115(2) (emphasis added).

The determination of whether an insurer has breached its duties to the insured is

one of reasonableness under the circumstances.  *Estate of Morris v. COPIC Ins. Co.*,

---

[7] A first-party claimant means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy.  Colo. Rev. Stat. § 10-3-1115.  It is undisputed that Mr. Sipes is a first-party claimant within the meaning of the Statutes.

192 P.3d 519, 523 (Colo. App. 2008).  In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim.  *Id*.  The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards.  *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law.  *COPIC*, 192 P.3d at 524.

Under common law bad faith principles, Colorado courts traditionally find that it is reasonable for an insurer to challenge claims that are "fairly debatable."  *Zolman*, 261 P.3d at 496.  Thus, under common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably.  *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (citation omitted).

Because the statutes at issue here, however, create a right of action that is different from the common law tort of bad faith breach of an insurance contract, the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing."  *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011).  Even if a defendant's denial was "fairly debatable" in the common law context, that would not

alone establish that the defendant's actions were reasonable as a matter of law under the statutes. *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012); *see also Sanderson*, 251 P.3d at 1218 (noting that, even under common law, finding that a claim was fairly debatable "is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case").

Allstate argues that it reasonably relied on its experts to conclude that Mr. Sipes' claim was excluded from coverage because there was evidence showing that (1) Mr. Sipes intentionally set the fire or the fire was set at his direction and (2) Mr. Sipes made misrepresentations during the investigation.  Docket No. 42-1 at 2.  The Court will first address whether it was reasonable for Allstate to rely on the evidence gathered during its investigation to conclude that Mr. Sipes intentionally caused the fire at the property.

Allstate claims that, based on the origin and cause reports and Ms. Booker's coverage analysis, it had a reasonable basis to believe that (1) the fire at the Rental Property was incendiary, (2) Mr. Sipes had a motive to set fire to the Rental Property, and (3) the circumstantial evidence supported an inference of arson.  Docket No. 42 at 13-17; *see Klayman v. Aetna Cas. & Sur. Co.*, 501 P.2d 750 (Colo. App. 1972) (noting that, to prove that plaintiff's coverage claim is excluded under the terms of the contract based on a defense of arson, defendant must prove by a preponderance of the evidence that plaintiff conspired to set fire to his rental property).

With regard to evidence of arson, Allstate contends that it had a reasonable basis to believe that the fire at the Rental Property was incendiary because the fire origin and cause reports from the Clifton Fire Department and Phoenix Investigations

both eliminated accidental causes of the fire and concluded that a human act must have caused the fire.  Docket No. 42 at 13.  Additionally, Ms. Booker opined that an intentionally set fire was the only theory consistent with the origin of the fire and the location of the fuel load.  *Id*. at 14.

Mr. Sipes claims that Allstate's reliance on Mr. Rowland and Mr. Kramarczyk's reports was unreasonable because Allstate has not shown that the conclusions of the reports are valid and Allstate did not take into consideration the expert report from John Lentini, Docket No. 47-7, Mr. Sipes' fire origin and cause expert.  Docket No. 47 at 5, 9.

The Court finds that Allstate had no reason, based on the contents of the reports themselves, to question the validity of the fire origin and cause reports provided by the Clifton Fire Department and Phoenix Investigations.  With regard to the Clifton Fire Department's report, it is undisputed that Mr. Rowland reached his opinions about the origin and cause of the fire by relying in part on the National Fire Prevention Association ("NFPA") 921: Guide for Fire and Explosion Investigations (2008).[8]  The parties here do not dispute that NFPA 921 is a generally accepted peer reviewed fire investigation guide that is the industry standard for investigations of fires and explosives.  *See Travelers Prop. & Cas. Corp. v. Gen. Elec. Co.*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001); *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013).  Additionally, Mr. Rowland utilized a generally accepted systematic approach to determine the origin of a fire as he performed a physical inspection of the interior and exterior of the Rental Property; analyzed the interior burn patterns; and observed that

---

[8]NFPA 921 (2011): Guide for Fire and Explosion investigations, *available at* http://www.nfpa.org/aboutthecodes/list_of_codes_and_standards.asp.

the fire's trajectory suggested drop-down burning originating from the kitchen.[9]   Docket

No. 42-7 at 4-5.   Based on his examination of the property, his analysis of the burn

patterns, and observations of the fire's trajectory, Mr. Rowland opined that the fire

originated around the "V" burn pattern on the north wall of the kitchen and the calcined

drywall in the utility room.   *Id.* at 7; *see Russell v. Whirlpool Corp.*, 702 F.3d 450, 457

(8th Cir. 2012) (finding a fire expert's methodology reliable when the expert considered

burn patterns, identified a point of origin, and eliminated as many alternative causes of

the fire as possible).   Mr. Rowland's use of negative corpus,[10] or process of elimination,

to rule out all ignition sources present in the areas of origin to conclude that the fire was

incendiary was a generally accepted methodology that complied with NFPA 921 at the

time of his investigation.[11]   *See* NFPA § 18.5 (noting that investigators should

hypothesize about ignition sources and test these hypotheses through deductive

---

[9]Drop-down burning occurs when combustible material falls from an elevated location onto the floor causing a low, even burn.  Docket No. 42-7 at 3.

[10]Negative corpus is the process of determining the ignition source of a fire by eliminating all other ignition sources found, known, or believed to have been present in the area of origin.  Docket No. 38-4 at 3 (NFPA 921 § 18.6.5 (2011)).  Negative corpus is short for negative *corpus delicti* and "is fire investigator shorthand for the determination that a fire was incendiary based on the lack of evidence of an accidental cause."  5 Faigman, Kaye, Saks & Sanders, Modern Scientific Evidence: The Law and Science of Expert Testimony § 39:65 (2012).

[11]In 2011, the NFPA rejected fire investigators' use of negative corpus to reach the conclusion that a fire is incendiary, finding that negative corpus "is not consistent with the Scientific Method, is inappropriate, and should not be used because it generates un-testable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited."  Docket No. 38-4 at 3 (NFPA 921 § 18.6.5).  Instead, the NFPA recommended that investigators who eliminated all accidental causes of a fire but did not find a fuel source in the area of origin conclude that the cause of the fire is "undetermined."  *Id*. (NFPA § 18.6.5.1).

reasoning); *Hickerson v. Pride Mobility Prods. Corp.,* 470 F.3d 1252, 1257-58 (8th Cir. 2006) (holding that "[b]ased on the identification of a point of origin and the elimination of other possible causes, it is permissible for [the cause and origin expert] to testify as to the point of origin and to explain that he inferred through process of elimination that the PowerChair was the cause of the fire"); *Somnis v. Country Mut. Ins. Co.*, 840 F. Supp. 2d 1166, 1172 n.2 (D. Minn. 2012) (discussing the history of negative corpus and NFPA 921). Because Mr. Rowland's methodology, including the use of negative corpus, was generally accepted by the relevant scientific community at the time Allstate sent its Claim Denial letter, the Court finds that it was reasonable for Allstate to rely on Mr. Rowland's fire origin and cause report in making its coverage decision. *See State Farm Mut. Auto Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011) (noting that an insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision); *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 390 (W.D. Pa. 2006) (noting in a bad faith insurance case that, "even if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them"); *cf. State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997) (noting in a bad faith insurance case that an "insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable").

The Court also finds that it was reasonable for Allstate to rely on Mr. Kramarczyk's fire origin and cause report. Although Mr. Kramarczyk did not utilize the

NFPA to prepare his report, NFPA 921 § 1.3 specifically indicates that "[d]eviations from [NFPA] procedures . . . are not necessarily wrong or inferior but need to be justified." *See also Pekarek v. Sunbeam Prods., Inc.*, 672 F. Supp. 2d 1161, 1176 (D. Kan. 2008) (noting that the fact that a fire investigator did not cite or use NFPA 921 as his guide does not necessarily mean that his methodology is not reliable). Mr. Kramarczyk's methodology was otherwise consistent with the NFPA as he identified the origin of the fire based on an examination of the exterior and interior of the property, analysis of burn patterns, and observation of the fire's trajectory.[12] Docket No. 42-8 at 10-13. Additionally, Mr. Kramarczyk eliminated all possible accidental ignition sources and opined that "[a]n intentionally set fire is the only fire cause scenario that fits both the fire's origin being distant from a fuel load and the cause of the fire in an area distant from any other potential causes." Docket No. 42-8 at 14. Because Mr. Kramarczyk used a methodology that is generally accepted and consistent with the NFPA, the Court finds that it was reasonable for Allstate to rely on his fire origin and cause report in making its coverage decision. *Schlesinger v. United States*, 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012) (noting that courts do not generally refuse "to admit expert testimony in an arson case because" the expert used a "methodology other than that prescribed in NFPA 921"); *Farmland Mut. Ins. Cos. v. Chief Indus., Inc.*, 170 P.3d 832, 836 (Colo. App. 2007) (finding that the process of elimination is a reliable methodology to determine the origin and cause of a fire). Moreover, Mr. Sipes has not otherwise shown

---

[12]Pursuant to NFPA § 17.1.2, to determine the origin of the fire, an investigator must analyze witness information, fire patterns, arc mapping (the analysis of whether the electrical system caused damage), and fire dynamics (the analysis of fire growth).

that Allstate's reliance on the fire origin and cause reports from the Clifton Fire

Department, an independent government body, and Phoenix Investigations, a private

company, was contrary to industry standards. *Savio*, 706 P.2d at 1274. Thus, because

Mr. Sipes has provided no evidence showing that Allstate had any reason to question

the validity of the fire origin and cause reports or that Allstate's reliance on these reports

was contrary to industry standards, the Court finds that it was reasonable for Allstate to

rely on the fire origin and cause reports to make its decision on Mr. Sipes' coverage

claim. *See COPIC*, 192 P.3d at 524.

To the extent Mr. Sipes argues that it was unreasonable for Allstate not to

consider the expert report from Mr. Lentini, the Court disagrees. Allstate could not have

acted unreasonably in connection with Mr. Lentini's expert report because this report

was not available for Allstate's consideration before it sent the Claim Denial letter.[13]

*See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003)

(noting that, for purposes of bad faith, the reasonableness of an insurer's conduct is

evaluated under the circumstances that existed at the time).

Although it was reasonable for Allstate to rely on the fire origin and cause

reports, these expert reports, by themselves, are insufficient to establish a reasonable

belief that Mr. Sipes intentionally set fire to the Rental Property. Mr. Kramarczyk's

report concluded that the fire was the result of an unidentified human act, but Mr.

---

[13]The Court notes that Mr. Sipes does not appear to raise a new claim of unreasonable denial based on Allstate's subsequent refusal to consider Mr. Lentini's report. *Cf. Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011)(noting that "the General Assembly intended the Statutes to apply prospectively to an insurer's acts of unreasonable delay or denial that occur after August 5, 2008, regardless of when the original claim for benefits was made.")

Kramarczyk did not opine on whether this action was intentional.  Docket No. 47-6 at 5 (Kramarczyk Dep. 155:18-20).  Additionally, although Mr. Rowland concluded that the fire was incendiary, there was also evidence that the Rental Property was unlocked on the day of the fire, allowing for the possibility that someone other than Mr. Sipes set the fire.  Docket No. 42-7 at 5.  Additionally, Ms. Littleton's summary noted that "[t]here [was] no direct evidence uncovered to date which points to Larry Sipes."  Docket No. 42-6 at 1.  Thus, although it was reasonable for Allstate to rely on the fire origin and cause reports to conclude that an unidentified human act started the fire, this evidence alone does not reasonably place Mr. Sipes' coverage claim within the "intentional act" exclusion of the policy.

        To further support its claim decision, Allstate argues that, in addition to the evidence suggesting arson, it had evidence that Mr. Sipes had a financial motive for setting the Rental Property on fire.  Docket No. 42 at 14.  Specifically, Allstate relies on Mr. Engrav's conclusion that Mr. Sipes did "not receive reportable income sufficient to cover his household expenses."  Docket No. 42-3 at 4.  Allstate contends that, because it had evidence that Mr. Sipes relied on his monthly income to pay for his mortgages and other expenses, it was reasonable or fairly debatable for Allstate to conclude that "Mr. Sipes chose to commit arson and collect insurance proceeds as a means to alleviate his financial responsibilities and difficulties."  Docket No. 42 at 14.

        In this case, the Rental Property was vacant for less than a month.  The previous tenants vacated the premises on March 6, 2010, Docket No. 42-7 at 4, and the fire occurred on March 30, 2010.  In addition, Allstate's investigation showed that, although the Wesolowskis chose not to stay in the Rental Property, Mr. Sipes kept $560 from the

17

Wesolowskis' deposit as rent for the month of March.  *Id.* at 5.   Although Mr. Engrav's

report indicated that Mr. Sipes needed the income from the Rental Property to cover his

monthly expenses, Docket No. 47-3 at 2 (Littleton Dep. 70:11-18), there is no evidence

in the record showing that Mr. Sipes actually suffered from financial hardship or that he

was behind on his mortgage payments.   There is also no evidence that Mr. Sipes had

trouble finding tenants for his rental properties.  *See* Docket No. 42-3 at 2 (noting that

the Rental Property "held tenants on a fairly continuous basis").   Instead, Allstate's

evidence of a financial motive relies primarily on the inferences Ms. Booker drew about

Mr. Sipes' month-to-month income.   Because Mr. Sipes denies that he had a financial

motive for setting the fire and there is no indication that he was behind on his mortgage

payments or that he otherwise suffered from financial hardship, the Court finds that

whether it was reasonable for Allstate to infer that Mr. Sipes had a financial motive to

set the fire based on a vacancy of less than a month raises a genuine dispute of

material fact.  *See COPIC*, 192 P.3d at 524.   Even if, as Allstate argues, this genuine

dispute of material fact is "fairly debatable," the Court finds that the evidence of a

financial motive is still insufficient as a matter of law to show that Allstate's reliance on

such evidence was reasonable under the statutes.  *Vaccaro*, 275 P.3d at 760.

Next, Allstate argues that it had a reasonable basis to infer that mold in the

Rental Property gave Mr. Sipes a motive to commit arson.  Docket No. 42 at 14.

Allstate argues that it was suspicious for Mr. Sipes to purchase materials to remediate

the mold despite Mr. Sipes' allegation that he had not seen the mold.  *Id.*  Additionally,

Allstate claims that the mold may have served as a motive for Mr. Sipes to set fire to

the Rental Property because it was proving "deleterious" to his ability to secure future

tenants.  *Id*. at 14-15.  Mr. Sipes disputes the existence of mold as a motive.  Docket

No. 47 at 7.  Mr. Sipes claims that, because there is no evidence of the extent of the

mold at the Rental Property, Allstate's inference that the mold served as an incentive to

commit arson is based on speculation.  *Id*.

In this case, there is no evidence about the actual extent of the mold at the

Rental Property.  Docket No. 42-3 at 6.  The Wesolowskis stated that there was some

mold on the bathroom ceiling, Docket No. 42-8 at 7, and Mr. Sipes admitted that he was

told that there was some mold in the kitchen.  Docket No. 42-8 at 4.  Mr. Sipes testified

that he was in the process of removing the mold and that he bought bleach to do so, as

well as untinted paint and Kilz primer to paint the walls of the Rental Property.[14]  Docket

No. 47-8 at 5 (Sipes Dep. 66:1-23).  Moreover, apart from evidence that the

Wesolowskis refused to lease the Rental Property, Allstate has presented no evidence

that Mr. Sipes had trouble finding new tenants for the Rental Property.  Thus, because

there is no evidence about the extent of the mold in the Rental Property, Mr. Sipes

testified that he was in the process of removing the mold and plaintiff disputes that the

mold provided a motive to set the fire, the Court finds that whether it was reasonable for

Allstate to infer from mold in the property that Mr. Sipes had a motive to commit arson

presents a genuine dispute of material fact.  *Vaccaro*, 275 P.3d at 760.

Finally, Allstate argues that it was reasonable to infer from the circumstantial

evidence that the fire was the result of arson.  Docket No. 42 at 15.  Allstate claims that

---

[14]During Mr. Sipes' deposition, Mr. Sipes indicated that he purchased Kilz to
cover the original wall paint.  Docket No. 47-8 at 5 (Sipes Dep. 68:13-25).  Mr. Sipes'
plan to remediate the mold was to wash the mold with "high priority" bleach water, cover
the walls with Kilz, and then paint the house.  *Id*. at 2 (Sipes Dep. 56:19-22).

Mr. Sipes' purchase of untinted paint and Kilz primer at the exact time that the fire was burning suggests an attempt to create an alibi.  *Id*.  Allstate also contends that Mr. Sipes' inconsistent statements about the mold to the Clifton Fire Department suggest that Mr. Sipes knew about the mold at the Rental Property and believed the mold to be a major issue.  *Id*.  Moreover, Allstate claims that there was no reasonable basis for Mr. Sipes to purchase such a large quantity of paint and primer if he had never seen the extent of the mold at the Rental Property.  *Id*.

Mr. Sipes does not dispute the existence of circumstantial evidence, but rather disputes the inferences Allstate draws from this evidence.  Docket No. 47 at 10-11.  Mr. Sipes also denies responsibility for setting the fire or any knowledge about who may have set fire to the rental property.  Docket No. 47-8 at 6 (Sipes Dep. 81:13-21).  He testified that he purchased the paint and the Kilz to paint the house.  *Id*. at 5 (Sipes Dep. 66:1-23).  Specifically, Mr. Sipes testified that he bought untinted paint because he did not know what color the Wesolowskis used to paint the walls of the Rental Property, so he bought untinted paint which he could "mix" with other colors once he knew the color of the walls.  *Id*. (Sipes Dep. 66:19-67:25).

Because the resolution of these factual disputes – i.e., whether Mr. Sipes saw the mold before the fire, the reason why Mr. Sipes did not tell the Clifton Fire Department about the mold, and why Mr. Sipes bought large amounts of paint – requires a judgment about Mr. Sipes' credibility, the Court finds that whether it was reasonable for Allstate to draw the inferences it did from circumstantial evidence

presents a genuine dispute of material fact.[15]  *Vaccaro*, 275 P.3d at 760.  Even if the

inferences Allstate drew from this evidence were fairly debatable, that alone would be

insufficient to entitle Allstate to summary judgment.  *Id*.

In summary, although it was reasonable for Allstate to infer that the fire at the

Rental Property was potentially caused by a human act, there remain genuine disputes

of material fact about whether it was reasonable for Allstate to infer that Mr. Sipes had a

motive to commit arson and whether it was reasonable for Allstate to infer that Mr.

Sipes committed arson because of the circumstantial evidence based upon the fire

origin and cause reports.  Accordingly, the Court finds that Allstate is not entitled to

summary judgment on its defense that it had a reasonable belief to deny Mr. Sipes'

claim because it fell within the "intentional act" exclusion of the insurance policy.

*Vaccaro*, 275 P.3d at 760.

Second, Allstate argues that it acted reasonably when it denied Mr. Sipes' claim

because Allstate uncovered information showing that Mr. Sipes "concealed and/or

misrepresented" facts related to matters involving the insurance including the "cause of

loss, [his] activities prior to the loss, [his] testimony that [he] never saw the mold in the

rental home, and, [his] financial condition prior to and after the loss."  Docket No. 42-1

---

[15]To the extent Mr. Sipes seeks to submit his polygraph results as evidence, the Court notes that polygraph tests are generally inadmissible in the Tenth Circuit.  *Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir. 1994).  Because Mr. Sipes has not endorsed an expert to testify about the admissibility of such results under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), he may not submit his actual polygraph results.  *See United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997).  In addition, the Court finds that the introduction of evidence that Mr. Sipes took a polygraph and submitted the results to Allstate is an impermissible end run around the general inadmissibility of polygraph results.  *See Jones v. Geneva Pharms., Inc.*, 132 F. App'x 772, 776 (10th Cir. 2005).

at 2.  The Court finds that whether Mr. Sipes concealed or misrepresented facts during

Allstate's investigation presents a genuine dispute of material fact.

First, Mr. Sipes has maintained that he did not set fire to the Rental Property

and, as discussed above, the circumstantial evidence is insufficient to entitle Allstate to

summary judgment.  Docket No. 47-8 at 6 (Sipes Dep. 81:13-21).  Second, there is no

evidence that Mr. Sipes misrepresented or concealed any information regarding his

activities the morning of March 30, 2010.  Allstate has presented no evidence to

contradict Mr. Sipes' statement that he left his girlfriend's house, stopped by the garage

outside the Rental Property, and then went to the Home Depot.  Docket No. 47-8 at 3

(Sipes Dep. 58:1-60:25).  Third, Allstate's belief that Mr. Sipes "misrepresented" that he

never saw the mold in the Rental Property is based on inferences Allstate draws from

its investigation.  *See, e.g.,* Docket No. 42-6 at 2 ("[t]he insured has denied knowing the

extent of the mold, but the purchases he made on the DOL . . . at Home Depot would

indicate that the mold was extensive"); Docket No. 42-3 at 6 (describing the reasons

why it is unlikely that Mr. Sipes never saw the mold).  Because the parties dispute

whether Mr. Sipes saw the mold before the date of the fire, the Court finds that this

question raises a genuine dispute of material fact.  *Vaccaro*, 275 P.3d at 760.  Finally,

there is no evidence in the record to indicate that Mr. Sipes lied about his financial

situation at any time during Allstate's investigation.  Instead, it appears that Mr. Sipes

gave Allstate his financial documents and Mr. Engrav made a conclusion about Mr.

Sipes' finances.  Docket No. 42-3 at 4; Docket No. 42-2 at 12 (Littleton Dep. 66:1-25).

Accordingly, because there are genuine disputes of material fact about whether

Mr. Sipes misrepresented or concealed information during Allstate's investigation of his

claim, the Court finds that Allstate is not entitled to summary judgment on its defense

that it had a reasonable belief to deny Mr. Sipes' claim because it fell within the

"misrepresentation, fraud or concealment" exclusion of the insurance policy.  *Vaccaro*,

275 P.3d at 760.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Allstate Indemnity Company's Motion for Partial Summary

Judgment [Docket No. 42] is **DENIED**.

DATED June 7, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge