IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02369-PAB-KMT

LARRY SIPES,

     Plaintiff,

v.

ALLSTATE INDEMNITY COMPANY, an Illinois corporation,

     Defendant.

---

## ORDER

---

    This matter is before the Court on the Motion to Partially Exclude the Expert Opinions of Everette Herndon [Docket No. 41] filed by defendant Allstate Indemnity Company ("Allstate").

    On March 30, 2010, a fire destroyed plaintiff Larry Sipes' rental house located at 413 30 1/4 Rd., Grand Junction, Mesa County, CO (the "Rental Property"). Docket No. 132 at 2.[1] Plaintiff filed a claim for insurance benefits with Allstate, which was denied on September 23, 2010. *Id*. As a result of Allstate's denial, plaintiff filed this case asserting claims against Allstate for breach of contract and unreasonable delay or denial of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. Docket No. 1. On January 25, 2013, Allstate agreed to pay plaintiff's insurance

---

[1]The following facts are taken from the Second Amended Final Pretrial Order [Docket No. 132]. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (noting that "'[w]hen an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings' because 'the pretrial order is the controlling document for trial'") (citation omitted); Fed. R. Civ. P. 16(e).

benefits.  Docket No. 132 at 2.  On March 9, 2013, Allstate paid plaintiff's insurance claim, *id*. at 3, and the Court dismissed plaintiff's breach of contract claim as moot.  *See* Docket No. 155; Docket No. 159 at 21-22.  On June 7, 2013, the Court denied Allstate's motion for summary judgment against plaintiff's claim of unreasonable delay or denial of insurance benefits.  Docket No. 153.  Accordingly, the only remaining issue for trial is whether Allstate unreasonably delayed or denied payment of plaintiff's insurance claim in violation of the statutes.

In this case, plaintiff retained Mr. Herndon as an expert on the insurance industry and Mr. Herndon issued an expert report on April 6, 2012.  *See* Docket No. 41-1.  To formulate his opinions, Mr. Herndon reviewed the pleadings in this case, plaintiff's insurance documents, and several publications on insurance law.  *Id.* at 18-19.  In the present motion, Allstate seeks to exclude eleven opinions proffered by Mr. Herndon on the grounds that these opinions are not relevant to plaintiff's only remaining claim.  *See* Docket No. 41 at 3-5 (listing Mr. Herndon's opinions).  Allstate, however, does not challenge Mr. Herndon's qualifications, methodology, or the reliability of his opinions.  Accordingly, the Court will limit its analysis to Allstate's challenges on the grounds of relevance.

## I.  Federal Rules of Evidence

Admission of expert testimony is governed by Rule 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

> expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.  Rule 702 assigns district courts a gatekeeper function to "ensure

that any and all scientific testimony or evidence admitted is not only relevant, but

reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The district

court's role as a gatekeeper applies regardless of whether the proffered testimony

concerns "scientific, technical, or other special[ized] knowledge." *Bitler v. A.O. Smith*

*Corp.*, 400 F.3d 1227, 1232-33 (10th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 149 (1999)).  To determine whether expert testimony is admissible, a trial

court must examine "whether the reasoning or methodology underlying the testimony is

scientifically valid and [ ] whether [the expert's] reasoning or methodology properly can

be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.  The proponent of the

expert testimony bears the burden of proving the foundational requirements of Rule 702

by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241

(10th Cir. 2009).

An expert's testimony must also be relevant, meaning that it must assist the fact

finder in understanding the evidence or determining a fact at issue. *Daubert*, 509 U.S.

at 591; *Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 975 (10th Cir. 2012).  In diversity

cases, federal law generally governs the admissibility of evidence challenged on the

basis of relevance. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir.

2006); *Romine v. Parman*, 831 F.2d 944, 945 (10th Cir. 1987).

Pursuant to Rule 401 of the Federal Rules of Evidence, evidence is relevant if "it

has any tendency to make a fact more or less probable than it would be without the

3

evidence." Fed. R. Evid. 401(a). Rule 401 establishes only a minimal level of probability, meaning that the evidence must render the asserted fact of consequence more probable than it would be without the evidence. *United States v. Leonard*, 439 F.3d 648, 651 (10th Cir. 2006). The Supreme Court has described the consideration of relevant evidence as one of "fit." *Daubert*, 509 U.S. at 591; *Bitler*, 400 F.3d at 1234. Thus, district courts must look at the logical relationship between the evidence proffered and the material issue in the case in order to determine whether the evidence proffered will assist the trier of fact. *Id*.

## II.  ANALYSIS

Allstate seeks to preclude Mr. Herndon from testifying at trial with regard to opinions that fall into four categories: (1) the purpose of insurance; (2) the duties and standards of an insurer; (3) the insurance company's job; and (4) Allstate's investigation of plaintiff's insurance claim. Docket No. 41 at 3-5.

### A.  Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116

Plaintiff's remaining claim is brought pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. Under § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). Similarly, § 10-3-1116 states that "[a] first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1). An insurer's delay is unreasonable "if the insurer delayed or

denied authorizing payment of a covered benefit *without a reasonable basis* for that action." Colo. Rev. Stat. § 10-3-1115(2) (emphasis added). Moreover, an insurer breaches its duty under these statutes if it engages in continuous "acts of unreasonable delay or denial regardless of when an insured originally made a claim for benefits under his or her insurance policy." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 976 (Colo. App. 2011).

The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Id.* The reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985).

Under common law bad faith principles, a finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably. *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (citation omitted). Because the statutes at issue here create a right of action that is different from the common law tort of bad faith breach of an insurance contract, the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing." *Kisselman*, 292 P.3d at 975. Thus, even if a defendant's denial was "fairly debatable" in the common law context, that alone would

not establish that the defendant's actions were reasonable as a matter of law under the statutes. *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012).

As noted above, the "threshold requirement for the admission of evidence is that it have some probative value." *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F.3d 1121, 1132 (10th Cir. 2011); *United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir. 2009). To determine whether evidence is relevant, courts conduct a dual inquiry into: "(1) whether the evidence is *probative* or factually relevant to the proposition asserted (i.e., whether the evidence tends to make the existence of that fact more or less probable), and (2) whether the proposition for which the evidence is offered is *properly* provable in the case (i.e., the fact is material-of-consequence-to the question of state law)." *Sims*, 469 F.3d at 881 (emphasis in original).

The consequential facts at issue in this case pertain to whether Allstate unreasonably denied or delayed paying plaintiff's insurance claim.[2] With regard to plaintiff's unreasonable denial claim, the issue presented is whether it was reasonable for Allstate to deny plaintiff's insurance claim on September 23, 2010 based on the results of its investigation which Allstate contends "revealed [that] the fire was intentionally caused by or at the direction of" plaintiff, that plaintiff "had a financial motive including the presence of mold on the property that caused him to lose tenants, and [that] there was unexplained circumstantial evidence implicating" plaintiff. Docket

---

[2]Although Allstate claims that plaintiff raises only an unreasonable delay claim, Docket No. 132 at 3, the Court notes that plaintiff asserts both that Allstate unreasonably denied and delayed payment of his insurance benefits. *Id*. at 2 ("[t]he remaining issue for trial is whether Allstate unreasonably denied and delayed payment of insurance benefits for the fire loss").

No. 132 at 2.  With regard to plaintiff's unreasonable delay claim, the issue presented is whether it was reasonable for Allstate to delay payment of plaintiff's claim until March 9, 2013.  *Id*. at 3.

### B.   The Purpose of Insurance: Opinion No. 11

Allstate argues that the Court should exclude as irrelevant Mr. Herndon's eleventh opinion in his report discussing the reasons why an insured purchases insurance coverage.  Mr. Herndon's eleventh opinion states that "[t]he policyholder should receive prompt payment for a covered loss in order to minimize the loss and reduce or eliminate further injury or loss."  Docket No. 41-1 at 7.  To reach this opinion, Mr. Herndon relied on an insurance law publication, which states that "[a] substantial part of the protection purchased by an insured is the right to receive policy benefits promptly.  Unwarranted delay [of insurance payments] can precipitate the precise economic hardship that the insured sought to avoid by the purchase of the policy."  *See* Allan D. Windt, *Insurance Claims & Disputes: Resolution of Insurance Companies and Insureds* at 74 (3d ed. 1995).

One issue the jury will have to decide in this case is whether it was reasonable for Allstate to delay payment of plaintiff's claim until March 9, 2013.  As noted above, the reasonableness of an insurer's delay or denial depends on proof of industry standards.  *Savio*, 706 P.2d at 1274.  Given that Mr. Herndon opines that an unwarranted delay on the part of the insurer may be unreasonable according to general insurance industry standards, Docket No. 41-1 at 7, Mr. Herndon's eleventh opinion is relevant because it is probative of the reasonableness of Allstate's handling of plaintiff's

insurance claim.  *See COPIC*, 192 P.3d at 523 (noting that an insurer's actions must be viewed in light of the circumstances at the time).  Because the balance between an insured's right to receive a prompt payment of insurance benefits and the insurer's right to investigate claims that are fairly debatable is an issue of consequence in this case, Mr. Herndon's eleventh opinion is factually relevant and admissible because it will assist the jury in determining whether Allstate's actions in this case were consistent with industry standards.  *Sims*, 469 F.3d at 881.

### C.   The Duties and Standards of an Insurer: Opinion No. 21

Allstate challenges Mr. Herndon's twenty-first opinion in his report on the grounds that it is irrelevant, but does not otherwise specify why it is irrelevant.  Mr. Herndon's twenty-first opinion states that "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" is an unfair claim settlement practice.  Docket No. 41-1 at 9 (citing Colo. Rev. Stat. § 10-3-1104(1)(h)(II)).

In Colorado, the common law tort of bad faith breach of an insurance contract is codified at Colo. Rev. Stat. § 10-3-1113 and provides that willful violations of the Colorado Unfair Claims– Deceptive Practices Act ("UCDPA"), Colo. Rev. Stat. § 10-3-1101 *et seq*., are relevant to "determining whether an insurer's delay or denial was reasonable."  Colo. Rev. Stat. § 10-3-1113(4); *see Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (noting that, while the UCDPA does not establish a standard of care for bad faith claims, it may be used as valid, but not conclusive, evidence of industry standards in an insured's bad faith suit against an insurer).

8

Section 10-3-1115 does not contain a similar provision, and instead states only that an insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis."  Colo. Rev. Stat. § 10-3-1115(2).  Although § 10-3-1115 disclaims the intent requirement of a § 10-3-1113 violation, the definition of reasonableness is comparable under both statutes. *See Vaccaro*, 275 P.3d at 758 (noting that common law bad faith precedent is helpful, but not dispositive, when interpreting a right of action under the statutes); Erin Robson Kristofco, *CRS §§ 10-3-1115 and -1116*: *Providing Remedies to First-Party Claimants*, 39 COLO. LAW. 69, 71 (July 2010) ("the insured's burden [under § 10-3-1115] remains the same as bad faith with regard to proving that the delay or denial was unreasonable").  Because the standard for reasonableness is similar under both the common law and the statutory claim, Mr. Herndon's twenty-first opinion regarding Allstate's potential violations of the UCDPA is factually relevant and admissible since it will assist the jury in determining whether Allstate's investigation was consistent with industry standards.  *Sims*, 469 F.3d at 881.

### D.   The Insurance Company's Job

 Allstate argues that the twenty-seventh and twenty-eighth opinions in Mr. Herndon's report should be excluded from trial because they are irrelevant to the issues presented in this case.  Docket No. 41 at 3-4.

#### 1.   Opinion No. 27

Mr. Herndon's twenty-seventh opinion states that "[o]nce a policyholder suffers a loss and reports the loss to the insurance company, the company normally assigns an

experienced and competent adjuster to handle the claim." Docket No. 41-1 at 9-10. To reach this opinion, Mr. Herndon relied on an insurance law publication which states that "[a] claims adjuster's job is to handle claims quickly and fairly. This means that the adjuster should contact claimants promptly in order to pay covered claims as soon as possible." *See* Barry D. Smith & Eric A. Wiening, *How Insurance Works* at 68 (2d ed. 1994).

Based on the final pretrial order, both parties have indicated that they will call Stephanie Littleton to testify regarding the "decision making processes, [and] the circumstances attending Allstate's decision to deny Plaintiff's" insurance claim.[3] Docket No. 132 at 6. Given that Ms. Littleton will testify about her decision-making process in denying and handling plaintiff's claim, the jury will have to determine whether Ms. Littleton had enough experience handling fire coverage claims to investigate properly plaintiff's insurance claim. Moreover, Ms. Littleton's experience is relevant to whether she handled plaintiff's insurance promptly and fairly in accordance with industry standards. Although there is somewhat of a disconnect between this opinion and the citation used to support it, this opinion is factually relevant and admissible to the question of whether Allstate's denial was reasonable given Ms. Littleton's experience in handling fire coverage claims. *Sims*, 469 F.3d at 881.

Second, because an insurer breaches its duty under the statutes if it engages in continuous "acts of unreasonable delay or denial [even after] an insured originally made a claim for benefits under his or her insurance policy," all evidence related to Allstate's

---

[3]On June 10, 2013, the Court excluded the live testimony of Rita Booker. Docket No. 155 at 2.

handling of plaintiff's claim until March 9, 2013 is relevant. *Kisselman*, 292 P.3d at 975-76. Thus, because plaintiff asserts that Allstate unreasonably delayed payment of his insurance claim, Mr. Herndon's opinion regarding an insurer's duty to pay an insured's claim soon as possible is probative of whether the amount of time it took for Allstate to investigate plaintiff's claim was reasonable. *Sims*, 469 F.3d at 881.

### 2. Opinion No. 28

Mr. Herndon's twenty-eighth opinion states that "[t]he insurance company has a duty to advise the first party insured of the benefits available under the policy. The insurance company is operating from a position of superior knowledge and deals with claims and policy provisions on a daily basis. The insurance company wrote the policy and the policyholder generally has no ability to negotiate the policy provisions. The individual policyholder must take the policy as is or not at all." Docket No. 41-1 at 10.

Because the reasonableness of an insurer's conduct depends on proof of industry standards, *Savio*, 706 P.2d at 1274, the Court finds that Mr. Herndon's twenty-eighth opinion is relevant and admissible as it will aid the jury in determining whether Allstate fulfilled its duty to advise plaintiff of his benefits under the policy when it investigated his claim. *Sims*, 469 F.3d at 881.

### E. Allstate's Investigation of Plaintiff's Insurance Claim

Allstate challenges Mr. Herndon's fifty-seventh, fifty-eighth, sixty-eighth, sixty-ninth, seventy-eighth, seventy-ninth, and eightieth opinions in his report as irrelevant. Docket No. 41 at 4-5.

### 1.   Opinion No. 57

Although Allstate does not challenge Mr. Herndon's fifty-sixth opinion, because his fifty-seventh opinion relies on Mr. Herndon's fifty-sixth opinion, the Court will consider both opinions.  In his fifty-sixth opinion, Mr. Herndon states:

> Allstate's claims handling and training manuals do have sections on the investigation of cause and origin of fires with a fairly heavy emphasis concerning "V" shaped burn patterns as being indicative of the cause and origin locations of a fire.  Allstate adjuster training coupled with the fire investigation reports may have mis-led the adjuster into too easily accepting the "V" shaped burn patterns as being strongly indicative of arson, when as Mr. Lentini points out, the burn patterns may not point to the cause and origin at all.[4]

Docket No. 41-1 at 14.  Mr. Herndon's fifty-seventh opinion states that "Allstate should revisit the reasoning (training) process and re-evaluate [plaintiff's] claim.  Failure to do so would be unreasonable in light of what I understand Mr. Lentini's findings are." *Id*.

The Court finds that Mr. Herndon's fifty-sixth and fifty-seventh opinions are factually relevant and admissible because they speak directly to a matter of consequence in the case, namely, whether Ms. Littleton received sufficient training to investigate fire coverage claims.  The sufficiency of the training Allstate's adjusters received bears directly on whether Allstate's denial or delay of plaintiff's insurance coverage claim was based on adequate and reliable grounds.

---

[4]John J. Lentini is plaintiff's fire origin and cause expert who issued an expert report on April 30, 2012.  Docket No. 47-7.  Although Mr. Herndon discusses Mr. Lentini's conclusions, Mr. Herndon does not explain how he acquired knowledge of Mr. Lentini's conclusions.  Moreover, the basis of Mr. Herndon's knowledge is not evident given that Mr. Lentini's expert report is not listed as one of the documents Mr. Herndon reviewed, *see* Docket No. 41-1 at 18-19, and Mr. Lentini issued his expert report *after* Mr. Herndon issued his expert report.  *See also id*. at 15-16, ¶ 68 ("From my preliminary understanding of what Mr. Lentini's report will show, . . .").

### 2.   Opinion No. 58

In his fifty-eighth opinion, Mr. Herndon states that "[w]hile Allstate had a

reasonable basis for initiating an investigation and withholding payment until the

investigation was completed, Allstate also has a duty to make an objective decision

based on the consideration of all reasonably available information, regardless of when

the information becomes available."  Docket No. 41-1 at 14.

As noted in the summary judgment order, there remain genuine disputes of

material fact about whether it was reasonable for Allstate to infer that mold or plaintiff's

financial situation were motives to set fire to the Rental Property.  *See* Docket No. 153

at 17-20.  Because the jury will have to decide whether Allstate's reliance on the

financial and mold motives was reasonable, Mr. Herndon's testimony that Allstate had a

"duty to make an objective decision based on the consideration of all reasonably

available information" is factually relevant because it is probative of whether it was

reasonable for Allstate to disregard evidence providing an alternative explanation for

the mold and plaintiff's financial situation.[5]  *Sims*, 469 F.3d at 881.

### 3.   Opinion No. 68

Mr. Herndon's sixty-eighth and sixty-ninth opinions in his report discuss Allstate's

fire origin and cause reports.  As part of its investigation of the fire at the Rental

Property, Allstate reviewed the fire origin and cause report prepared by Chris Rowland,

a firefighter with the Clifton Fire Department.  Docket No. 153 at 2.  Mr. Rowland's

---

[5]Moreover, to the extent Mr. Herndon's fifty-eighth opinion relies on Mr. Lentini's
conclusions, this opinion is also relevant to whether it was reasonable for Allstate to
delay payment of plaintiff's insurance claim until March 9, 2013.

investigation concluded that the fire at the Rental Property was incendiary because there were (1) multiple areas of origin, (2) insufficient fuel loads in the areas of origin, (3) no accidental or natural ignition sources, and (4) the Rental Property was unlocked before the fire.  Docket No. 42-7 at 7-8; Docket No. 153 at 2.  Allstate also retained Phoenix Investigations for a second opinion on the origin and cause of the fire.  Docket No. 42-8 at 1; Docket No. 153 at 3.  Jason Kramarczyk, a certified fire and explosion investigator, prepared Phoenix Investigations' fire origin and cause report.  Mr. Kramazrcyk concluded that the fire originated near the floor area surrounding the north wall of the kitchen or west of the cabinets and that the fire was likely caused by an unidentified human act.  Docket No. 42-8 at 1.

After filing the case, plaintiff retained the services of John J. Lentini, who issued a fire origin and cause report on April 30, 2012.  Docket No. 47-7.  In his report, Mr. Lentini concluded that the origin and cause of the fire at the Rental Property was inconclusive and that the fire could have originated near the furnace.  Docket No. 47-7 at 2-8; Docket No. 132 at 10.

Because the conclusion in Mr. Herndon's sixty-eighth opinion relies on Mr. Herndon's sixty-seventh opinion, the Court will consider both opinions.  In his sixty-seventh opinion, Mr. Herndon states that:

> The conclusions reached on the basis of the reports of Clinton Fire and Mr. Kramarczyk are questionable as a basis for Allstate's decision that Mr. Sipes intentionally set the fire.  The reports concluded incendiary origins as a "fall-back" theory, primarily on the basis that the investigators did not find an accidental cause.  My preliminary understanding of the findings of Mr. Lentini, the plaintiff's fire expert, is that there is a possible accidental cause and that the conclusions reached by Mr. Kramarczyk and Clinton Fire are in error and may not be sufficient to support a conclusion of incendiary origin.

14

Docket No. 41-1 at 15.  Mr. Herndon's sixty-eighth opinion states that:

> Further investigation is needed by Allstate (or Mr. Kramarczyk or Clinton Fire) wherein they take into account recent scientific testing and research (according to Mr. Lentini) into Post-Flashover Fire Behavior.  This will require that Allstate reconsider their conclusions.  From my preliminary understanding of what Mr. Lentini's report will show, Allstate fails to have a reasonable basis for claiming that there was an incendiary cause and origin of the fire or that the fire originated at the base of the "V" burn patterns in the kitchen.  Allstate should not rely on the defense of an intentional or incendiary cause without additional investigation and consideration of Mr. Lentini's report and findings.

Docket No. 41-1 at 15-16.

Mr. Herndon's sixty-seventh and sixty-eighth opinions suggest that, after Allstate received Mr. Lentini's report, Allstate should have continued to investigate plaintiff's insurance claim because Mr. Lentini's report called into question Mr. Kramarczyk and Mr. Rowland's conclusion that a human actor set the fire at the Rental Property.  As noted in the Court's summary judgment order, because Allstate did not have the benefit of Mr. Lentini's report when it denied plaintiff's insurance claim on September 23, 2010, Mr. Lentini's report is irrelevant to the issue of the reasonableness of Allstate's September 23, 2010 denial.  Docket No. 153 at 16; *see also Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003).  Accordingly, to the extent Mr. Herndon's sixty-seventh and sixty-eighth opinions rely on Mr. Lentini's report, they are irrelevant and inadmissible if offered to opine on the reasonableness of Allstate's denial of plaintiff's claim on September 23, 2010.

However, because the jury will have to determine whether it was reasonable for Allstate to delay payment of plaintiff's insurance claim until March

9, 2013, Mr. Herndon's sixty-seventh and sixty-eighth opinions are relevant and admissible if offered to establish that Allstate unreasonably delayed payment of plaintiff's insurance benefits. *Sims*, 469 F.3d at 881; Colo. Rev. Stat. § 10-3-1115(2). In other words, whether Allstate should have continued its investigation of plaintiff's claim upon receipt of Mr. Lentini's report is factually relevant and probative of a matter of consequence in this case.

### 4. Opinion No. 69

Mr. Herndon's sixty-ninth opinion states that "[g]iven the fairly recent (last 5 to 15 years) research into Post-Flashover Fire Behavior, it is unreasonable for Allstate to continue to rely on the reports of Clinton Fire and Mr. Kramarczyk without specific consideration by Allstate's experts into this phenomenon." Docket No. 41-1 at 16. Mr. Herndon does not explain the basis for his knowledge of post-flashover fire behavior. *See id.* Assuming Mr. Herndon's knowledge of post-flashover fire behavior is based on a review of Mr. Lentini's expert report, this opinion is relevant to the issue of whether it was reasonable for Allstate to delay payment of plaintiff's insurance claim. *See Sims*, 469 F.3d at 881. However, if based on Mr. Lentini's opinions, Mr. Herndon's sixty-ninth opinion is inadmissible to the extent it is proffered to opine on the reasonableness of Allstate's denial of plaintiff's claim on September 23, 2010.

### 5. Opinion No. 78

Mr. Herndon's seventy-eighth opinion discusses Allstate's reliance on plaintiff's financial situation at the time of the fire and states that "[w]hile Mr.

16

Sipes' reported income may be borderline for maintenance of himself and his properties, the Allstate [claims] file and the information from the investigation by Allstate's attorney into Mr. Sipes' financial condition do not include any detailed investigation into possible unreported income from his odd jobs and other possible income sources.  A further investigation into Mr. Sipes' finances should be conducted before Allstate relies on a defense that Mr. Sipes was in sufficiently bad financial shape as to constitute a motive for arson."  Docket No. 41-1 at 17.

As noted in the summary judgment order, one issue that the jury will have to determine is whether it was reasonable for Allstate to rely on the evidence of a financial motive to deny plaintiff's insurance claim.  Docket No. 153 at 17-18. Because the jury will have to consider whether Allstate reasonably relied on plaintiff's financial situation at the time it denied his insurance claim on September 23, 2010, Mr. Herndon's opinion that Allstate should have "further investigat[ed] [ ] Mr. Sipes' finances" before denying his claim, Docket No. 41-1 at 17, is factually relevant and admissible because it will assist the jury in determining a fact of consequence in the case, namely, whether Allstate reasonably denied plaintiff's coverage claim.  *Sims*, 469 F.3d at 881; *Oldbear*, 568 F.3d at 820.  Accordingly, the Court finds that Mr. Herndon's seventy-eighth opinion is relevant and admissible.

### 6.   Opinion No. 79

Mr. Herndon's seventy-ninth opinion discusses plaintiff's polygraph test and states that "[i]t is my understanding from Mr. Kaye, attorney for Mr. Sipes,

that Mr. Sipes took and passed a polygraph test.  While such a test may or may not be admissible in court, Allstate can and should take the results of the test into consideration when trying to assess the credibility of Mr. Sipes, as opposed to the suspicions and conjecture made by Allstate, in attempting to make a decision on coverage.  The results of the polygraph test are consistent with the information from Allstate's attorney following the EUO which indicated credibility on the part of Mr. Sipes."  Docket No. 41-1 at 17.

As noted in the order on summary judgment, results of "polygraph tests are generally inadmissible in the Tenth Circuit."  Docket No. 153 at 21 n. 15 (citing *Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir. 1994)).  Thus, because plaintiff has not endorsed an expert to testify about the admissibility of his polygraph under *Daubert*, 509 U.S. 579, plaintiff may not submit his actual polygraph results.  *See United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997).  In addition, plaintiff may not introduce evidence that he took a polygraph and submitted the results to Allstate because this is an impermissible end run around the general inadmissibility of polygraph results.  *See Jones v. Geneva Pharms., Inc.*, 132 F. App'x 772, 776 (10th Cir. 2005).  Accordingly, because plaintiff cannot introduce any evidence regarding his polygraph test or what the results of this test were, Mr. Herndon's seventy-ninth opinion discussing plaintiff's polygraph test is inadmissible.  *See id*.

### 7.   Opinion No. 80

Mr. Herndon's eightieth opinion states that "[w]ith the conclusions drawn from the two fire investigation reports being brought into question and the apparent good credibility of Mr. Sipes[,] the decision of Allstate to deny coverage is unreasonable and should be revisited."  Docket No. 41-1 at 17, ¶ 80.  Mr. Herndon does not explain what evidence he relies upon to find that Allstate's fire investigations were called into question.  Regardless of this fact, for the same reasons discussed with regard to Mr. Herndon's sixty-eighth and sixty-ninth opinions, the Court finds that Mr. Herndon's eightieth opinion is relevant and admissible because it will assist the jury in determining whether Allstate unreasonably delayed payment of plaintiff's insurance claim.  *Sims*, 469 F.3d at 881.  However, depending on the purpose of the proffered opinion, Mr. Herndon may not be permitted to express an opinion on the credibility of any of the witnesses.  *See United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (noting that it is well established that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702"); *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001) (noting that "a proposed expert's opinion that a witness is lying or telling the truth might be 'inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion").

19

III.  **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Allstate Indemnity Company's Motion to Partially Exclude

Expert Opinions of Everette Herndon [Docket No. 41] is **GRANTED** in part and

**DENIED** in part.  It is further

**ORDERED** that Everette Herndon may testify as to opinions 11, 21, 27,

28, 57, 58, 68, 69, 78, and 80.  Allstate's motion is granted as to opinion 79.

DATED August 15, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge